UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Tampa Division

ERNEST HARDEN,                                    Case No : 8:07-cv-675-T-30TGW

               Plaintiff,

v.

DAVITA INC. and KRISTINE A JOHNSON,

               Defendants.

_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW, the Defendants, DVA Healthcare Renal Care, Inc d/b/a Temple Terrace Dialysis (incorrectly named as DaVita, Inc.) and Kristine A Johnson, and move for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, and as grounds therefore would state:

Plaintiff's Complaint alleges a cause of action for racial discrimination pursuant to 42 U.S.C. § 1981 (Counts I and II), for common law defamation (Counts III and IV) against each of these defendants and for negligent hiring (Count V).

### Description of Parties

1.     Plaintiff, Ernest Harden, was a renal dialysis patient of DVA Healthcare Renal Care, Inc d/b/a Temple Terrace Dialysis (hereinafter referred to as "DaVita Temple Terrace") from February 9, 2001 until June 28, 2006.

-1-

2.    DaVita Temple Terrace, formerly Gambro Healthcare, was and is a renal dialysis clinic located at 11306 53rd Street, Temple Terrace, Florida 33637.

3.    Kristine A. Johnson, R.N., was the facility administrator for DaVita Temple Terrace and responsible for the day to day operations of the facility, patient care and supervision of staff.

## Brief Statement of the Parties' Positions

In June of 2006, Ernest Harden was overheard making verbal threats to bring a gun into and blow up the DaVita Temple Terrace facility. When the threatening statements came to the attention of these defendants, they made the determination that Ernest Harden had violated the Zero Tolerance Policy for Workplace Violence and posed a potential danger to patients and staff at the facility and dismissed him as a patient. Plaintiff, Ernest Harden, contends that Defendants fabricated the statements attributed to him thereby defaming him and that he was dismissed from the facility because he is African American, in violation of 42 U.S.C. § 1981.

## Record Evidence Filed in Support of the Motion

| | |
|---|---|
| Exhibit "A" | Deposition of Laverne Baker, R.N., former clinical coordinator for DaVita Temple Terrace. |
| Exhibit "B" | Deposition of Persephanie (Stephanie) Singletary, former patient care technician at DaVita Temple Terrace. |
| Exhibit "C" | Affidavit of Kristine Johnson, R.N., former facility administrator for DaVita Temple Terrace who was responsible for patient care and supervision of employees. |
| Exhibit "D" | Affidavit of Kristine Johnson, R.N., regarding her qualifications |
| Exhibit "E" | Deposition of Ernest Harden. |

-2-

| | |
|---|---|
| Composite Exhibit "F" | Workplace Violence: Zero Tolerance Policy set forth in "Your Responsibilities as a Patient" signed by Ernest Harden on December 5, 2002 |
| Exhibit "G" | Letter from Christine Boyette, R N to Ernest Harden hand delivered to him on June 29, 2006 |
| Composite Exhibit "H" | Portions of Ernest Harden's medical record for dates June 28, 2006 and June 29, 2006, with entries made by Christine Boyette, R.N , Kristine Johnson, R N |
| Exhibit "I" | Incident Report by Kristine Johnson, R.N., dated June 29, 2005 (should be 2006) and July 4, 2006 |
| Exhibit "J" | Handwritten note of Persephanie Singletary entitled, "Comments and Statements" recording her interviews with other staff members as to what they overheard Ernest Harden say. |
| Composite Exhibit "K" | Plaintiff's Answers to Interrogatories. |
| Composite Exhibit "L" | Temple Terrace Police Report. |
| Exhibit "M" | Portion of Ernest Harden's medical record dated 6/29/06 with entry by Amy Buchalter, Social Worker. |

### Facts of the Case

Ernest Harden became a patient of Gambro Healthcare, now DaVita Temple Terrace, on February 9, 2001 (Deposition of Ernest Harden, page 5). The treatment was paid for by Medicare and Cigna (Deposition of Mr. Harden, pages 39-41). On December 5, 2002 he signed a document

titled "Patients Responsibilities" which advised of the Workplace Violence: Zero Tolerance Policy[1]

(Exhibit "F.") He normally dialyzed on Tuesdays, Thursdays and Saturdays, beginning at 6:30 a.m.

(Deposition of Laverne Baker, R.N., page 9). The patients were designated to certain chairs, four

chairs per pod, per a seating chart for every treatment (Deposition of Laverne Baker, R.N., pages 9

and 10). Plaintiff's witnesses Marissa Godbolt and Kenny Capel were also dialysis patients who sat

in close proximity to Ernest Harden (Deposition of Laverne Baker, R.N., page 10). Laverne Baker,

R.N. knew Mr. Harden as a patient for two and a half years and often heard him talk about having

guns in his home. (Deposition of Laverne Baker, R.N., pages 8 and 12)

In May or June of 2006, Laverne Baker, R.N., overheard Ernest Harden say, "I'll come in

here and blow this place up. You know, these people in here, they don't know me " and I'll "bring

a gun into the clinic and blow the place up." (Deposition of Laverne Baker, R.N., pages 12 and 14.)

Ms. Baker testified she was concerned about Ernest Harden's verbal threats, so she relayed his

comments to her direct supervisor, Kristine Johnson, R.N. (Deposition of Laverne Baker, R.N.,

---

[1] (F.N.) As a Gambro Healthcare patient, you have the following responsibilities to yourself, the facility, the staff, and your fellow patients. There may be consequences if you fail to fulfill these responsibilities which can include, but are not limited to, physical side effects, loss of privileges and temporary or *permanent* dismissal from the facility (italics added)

Gambro takes all threats of workplace violence very seriously and supports a workplace violence: zero tolerance policy:

* Acts or threats of violence by anyone on Gambro premises will not be tolerated.
* Verbal, physical or visual intimidation or harassment by anyone will not be tolerated.
* Violations of this policy may lead to loss of privileges and temporary or permanent dismissal from the facility.
* Everyone is responsible for immediately reporting acts or threats of violence, intimidation or harassment. These reports should be given to the nurse responsible for clinical care or other Gambro employees as appropriate (i.e., social worker, facility/program administrator, nurse)
* Possession of weapons or firearms at the facilities is absolutely provided (this policy does not apply to uniformed law enforcement personnel, whether on or off duty, who are required by law to carry their weapons while in uniform).
* Specific examples of conduct that may be considered threats or acts of violence include, but are not limited to, the following:
  - a) hitting or shoving an individual.
  - b) threatening an individual or his/her family, friends, associates or property with harm
  - c) the intentional destruction or threat of destruction of property
  - d) harassing or threatening phone calls
  - e) harassing, surveillance or stalking

-4-

pages 11 and 12 and Exhibit "C").  Ernest Harden denies he made such statements.  (Deposition of Ernest Harden, pages 6-9.)

On May 25, 2006, Amy Buchalter and Kristine Johnson, R.N. met with Mr. Harden to discuss complaints they had received regarding Mr. Harden's negative and derogatory comments towards staff and other patients.  (Exhibits "H" and "I" and deposition of Mr. Harden, page 11-13).  They had also received complaints that other patients, Marissa Godbolt and Kenny Capel were being rude and harassing to staff members and other patients and met with them as well  (Exhibit "I.")  Both Marissa Godbolt and Kenny Capel are African American.  (Deposition of Ernest Harden, pages 57 and 58.)

On June 27, 2006, Laverne Baker, R.N., overheard Mr. Harden make another threat, specifically, "These people don't know me.  I'm gonna come in here.  I'm gonna blow everything up."  (Deposition of Laverne Baker, R.N., page 15)

After Mr. Harden's second threat of violence, Laverne Baker, R.N., again relayed the statements to Kristine Johnson, R.N.  (Deposition of Laverne Baker, R.N., pages 16 and 17).  Kristine Johnson, R.N., considered this to be an escalation in the behavior he had been warned about earlier as well as a violation of his patient responsibility under the Workplace Violence: Zero Tolerance Policy (Exhibits "C, " "F," "H," and "I.").

Kristine Johnson, R.N., conferred with her immediate supervisor Christine Boyette, R.N. and a decision was made to discharge Mr. Harden from the facility, because he was a potential danger to other patients and staff and had violated the policy by threatening violence.  (Exhibits "C," "F," "G," "H,""I," "L" and "M.")

On or about June 28, 2006, Kristine Johnson, R.N., asked Persephanie Singletary to interview other staff members as to statements they had overheard Mr. Harden make (Deposition of Persephanie Singletary page 14-16)  Among other comments, staff members heard Mr. Harden say he,"will blow up the clinic," "I have too many guns" and "If Kris [Kristine Johnson] keeps getting my time wrong, I'm gonna come back here with a gun." (See Exhibit "J.")

On or about June 28, 2006, Kristine Johnson, R.N. had a meeting with all the staff members present that day and advised the staff that because of everyone's concerns and threats that Ernest Harden had made, he would be removed from the clinic and there would be security at the facility for two weeks (Deposition of Laverne Baker, R.N. pages 18 and 19).

On June 29, 2006, Christine Boyette met Mr. Harden in the parking lot as he arrived for his morning treatment, and provided him with a copy of Exhibit "G"[2] and verbally communicated the contents of the letter to Mr. Harden in the presence of a Temple Terrace Police Officer. (Exhibit "L"). Mr. Harden denied making such statements  (Deposition of Mr. Harden, page 41 - 43.)

Defendants contend Ernest Harden was dismissed from DaVita Temple Terrace because he violated the Workplace Violence: Zero Tolerance Policy and posed a potential danger to the health

---

[2] (FN) Exhibit "G" - "Ernest Harden, There are a number of concerns regarding your continued care and outpatient treatment administered by the medical and nursing staff of DaVita Temple Terrace  On June 27, 2006, you engaged in the threat of violence against the facility and administrator which constituted a direct threat to the health and safety of our teammates and the other patients treated at the DaVita Temple Terrace

Ernest Harden, it is our mission and desire to provide medical assistance to our patients in a professional manner.  We understand that it is difficult to experience the types of problems that you must face each day.  The patient/physician healthcare provider relationship is one that must be based on trust, understanding and mutual respect  If these elements are absent, it is very difficult to provide the type care that you and every other patient deserve  Moreover, we have a responsibility to provide a safe workplace for our teammates and a safe place for medical care for all of our patients

When you began treatment at Temple Terrace, you signed documents entitled, "Patients Rights and Responsibilities" dated December 12, 2000 (should be 2002)  This stated that the patient was advised that we have a Zero Tolerance Policy regarding violence and threats of violence  Your actions of June 27, 2005 (should be 2006) violated both of these agreements and that threatening violence against teammates is very serious and violates the Zero Tolerance Policy.  As such, and pursuant to the agreements you signed, you will no longer be able to seek treatment at the Davita Temple Terrace, effective immediately  You should seek treatment at one of the following dialysis facilities or the nearest emergency room  We are distressed at having to take this action, but your behavior leaves us no choice as we must protect the health and safety of our other patients as well as our teammates.
Sincerely, Christine Boyette, Regional Operations Director "

and safety of other patients and staff, not because he was African American. (Exhibits "C" and "G.")

No other patients of any race had previously violated DaVita's Workplace Violence: Zero Tolerance

Policy or threatened gun violence (Exhibit "C").

## STANDARD FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure (Rule 56) authorizes a summary judgment when there

is no genuine issue as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 424, 106 S.Ct.

2505, 91 L.Ed. 2d 202 (1986). Summary judgment is regarded as an integral part of the Federal

Rules as a whole and is designed to secure a just, speedy and inexpensive determination of an action.

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986). The role of the

court in reviewing a motion for summary judgment is to decide whether the evidence presents a

sufficient disagreement to require submission to a jury, or in the alternative, whether it is so one-

sided that one party must prevail as a matter of law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646

(11th Cir. 1997). Once the moving party has established the absence of a genuine issue of material

fact, the opposing party must present sufficient evidence for a jury to return a jury in favor of the non

moving party. There must be more than a scintilla of evidence, rather, there must be substantial

conflict in evidence to support a jury question. Tidwell v. Carter Prods, 135 F.3d 1422, (11th Cir.

1998).

## ARGUMENT/LAW REGARDING 42 U.S.C. § 1981

PLAINTIFF, ERNEST HARDEN, HAS NOT AND CANNOT SHOW THAT ANY
SIMILARLY SITUATED INDIVIDUAL IN A NON-PROTECTED CLASS WAS TREATED
MORE FAVORABLY THAN HIM. ADDITIONALLY, DEFENDANTS DAVITA TEMPLE
TERRACE AND KRISTINE JOHNSON, R.N. HAD A LEGITIMATE REASON FOR
DISCHARGING ERNEST HARDEN FROM THE FACILITY. THE LEGITIMATE REASON IS
THAT HE VIOLATED HIS AGREEMENT TO ABIDE BY THE WORKPLACE VIOLENCE:
ZERO TOLERANCE POLICY AND THAT HE POSED A POTENTIAL DANGER TO THE

HEALTH AND SAFETY OF OTHER PATIENTS AND STAFF.   FURTHER, PLAINTIFF, ERNEST HARDEN, HAS NOT AND CANNOT SHOW THAT THE REASONS ADVANCED BY THESE DEFENDANTS FOR DISCHARGING HIM WERE PRETEXTUAL.

Plaintiff has brought this cause of action 42 U.S.C. § 1981 which reads as follows:

**Section 1981 Equal Rights Under the Law (a) Statement of Equal Rights**

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

(B)     "Make and enforce contracts" defined.

> For purposes of this Section, the term "Make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits privileges, terms, and conditions of the contractual relationship.

(C)     Protection against impairment.

> The rights protected by this Section are protected against impairment by non governmental discrimination and impairment under color under state law.

The undersigned acknowledges that the Courts have interpreted "contracts" very broadly, to apply to retail and restaurant customers and even individuals proposing to exchange money at a bank.  For purposes of a claim under 42 U.S.C. § 1981, a contract must be supported by consideration in order to be enforceable.  Barfield v. Commerce Bank, N.A., 484 F. 3d 1276, (U.S. Courts Appeal 10th Cir. 2007).  Consideration is defined as a right, interest, profit or benefit accruing to one party or some forbearance detriment, loss or responsibility given, suffered or undertaken by the other.  Barfield  citing 17 A. Am. Jur, 2d contracts § 113, page 129.  A promise is without

consideration when the promise is given by one party to another without anything being bargained for and given in exchange for it. Barfield, *supra*.

The undersigned cannot find any cases in which 42 U.S.C. § 1981 has been applied to a patient receiving medical care from a healthcare provider. Defendants contend that an enforceable contract did not exist between Plaintiff, Ernest Harden and these Defendants because Mr. Harden did not provide anything in consideration for renal dialysis care, but rather payments were made by Medicare and Cigna. Therefore, these Defendants contend that 42 U.S.C. § 1981 is not applicable to this claim. However, if this Court disagrees, and deems 42 U.S.C. §1981 to be applicable to this cause of action, then Defendants contend that Plaintiff has failed to state a cause of action because he cannot meet the elements necessary to prove his claim.

Section 1981 claims are subject to a three-part test. The Plaintiff must demonstrate 1) That he a member of the protected class. [These Defendants stipulate that Ernest Harden is a member of a protected class.] 2) That the Defendant had the intent to discriminate on the basis of race and 3) that the discrimination interfered with a protected activity as defined in § 1981. Hampton v. Dillard Department Stores, Inc., 247 F.3d 1091, 1102 (10th Cir. 2001). These Defendants assert that Prong 2 is at issue in that there is no record evidence that these Defendants intended to discriminate against Mr. Harden on the basis of race.

In a claim for racial discrimination under § 1981, in the absence of direct evidence, Plaintiff can survive summary judgment only through the indirect burden shifting method of McDonnell Douglas Corp. v. Green, 411 US 792, 802-03, 93 S.Ct 1817, 36 L.Ed.2d 688 (1973). Under the McDonnell Douglas test, Mr. Harden has the burden of proving that similarly-situated non protected individuals were treated more favorably. In this case, there is no record evidence that "any

similarly-situated non protected individuals" were treated more favorably  Indeed, the record evidence shows that no other patient, of any race, other than Ernest Harden, was dismissed from the facility for threats of violence.[3]  Accordingly, Plaintiff cannot establish a prima facia case under 42 U.S.C. § 1981. Amini v. Oberlin College, 440 F. 3d 350 (6th Cir. 2005)

Even if Mr. Harden could meet his burden of showing that similarly-situated non protected individuals were treated more favorably than him, these Defendants had a legitimate non discriminatory reason for their actions. These Defendants had a duty to protect the health and safety of the patients they serve and their employees at the facility and to enforce their written policies. Once these Defendants show that there was a legitimate non discriminatory reason for their actions, under McDonnell Douglas, the burden then shifts back to Plaintiff, Ernest Harden, to demonstrate that these Defendants' reasons for dismissing Mr. Harden were merely pretextual. McDonnell Douglas, supra, Wells v. Burger King Corp., 40 F. Supp. 2d 1366 (U.S. Dist. Ct. N.D. Fla, 1998). In other words, Plaintiffs have the final burden of producing evidence which is sufficient to allow a fact finder to disbelieve Defendants explanation for their actions. Combs v. The Plantation Patterns, 106 F. 3d 1519 (11th Cir. 1997).

In fact, in Interrogatory No. 16 served to Plaintiff by these Defendants, Plaintiff was asked to list each and every basis for his contention that Defendant, DaVita refused to treat him solely because of his race. His answer is as follows:

"DaVita relied on information provided by Kris Johnson. Kris Johnson has made comments about Afro Americans. She had separated the black nurses to the black patients, the Hispanic nurses

---

[3] To other patients, Marissa Godbolt and Kenneth Capel (who were also African American), were counseled for making obnoxious comments about staff members and patients, but their behavior did not escalate to threats of harming others (Exhibits "I")

to the Hispanic patients " Further, he answered that he heard Kristine Johnson state, "I'm a country girl. I didn't know any black people in my life. I didn't see the first black man until I got to drive through Georgia." (Exhibit "K.") Based on the record evidence, no reasonable person could conclude that Ernest Harden has made a prima facia case to show these Defendants intended to discriminate against him because of his race. Further, he cannot show the reason given for his discharge was pretextual. Accordingly, these Defendants are entitled to summary judgment as to Count I and Count II as a matter of law.

## ARGUMENT/LAW DEFAMATION

THE ALLEGED DEFAMATORY COMMUNICATION WHICH PLAINTIFF COMPLAINS OF WAS NOT PUBLISHED TO A THIRD PERSON AND THEREFORE IS NOT ACTIONABLE. FURTHER, ALL COMMUNICATIONS REGARDING THE SUBJECT MATTER WERE CONDITIONALLY PRIVILEGED AND THEREFORE NOT DEFAMATORY AS A MATTER OF LAW.

In Interrogatory No. 15 served to Plaintiff by these Defendants, Plaintiff was asked to "List in detail every statement by an employee of Temple Terrace Dialysis which you claim defamed you, identify the person who made the statement and the date of such statement." (Exhibit "K.") In his answer, the only communication he refers to is the hand delivered letter to him from Christine Boyette on June 29, 2006 (Exhibit "G.") Although Mr. Harden does not reference specific language, the Complaint alleges that statements attributed to him regarding gun violence were fabricated by Kristine Johnson, R.N.

Plaintiff has not shown and cannot show that the alleged defamatory statement (Exhibit "G") was published to any third person. A defamatory statement does not become actionable until it is published or communicated to a third person. Statements made to the person alleging the defamation do not qualify. American Airlines v. Geddes, 960 So. 2d 830 (3rd DCA 2007). Ernest Harden does

not qualify as a third person and therefore there was no publication.

Further, Laverne Baker, R.N., Kristine Johnson, R.N. and Christine Boyette, R.N. all held managerial/executive positions, and thus, any statements made by them were not published and therefore, are not actionable. When the entity alleged to have committed the defamation is corporation, courts have held that the statements made to corporate executives or managers of that entity are in effect being made to the corporation itself, and thus lack the essential element of publication. Geddes, *supra*, citing Hays v. Wal-Mart Stores, Inc., 953 F. Supp. 1334 (M.D. Ala 1996); Advantage Personnel Agency v. Hicks and Grayson, Inc., 447 So. 2d 330 (3rd D.C.A. 1984).

Accordingly, statements made among and between Laverne Baker, R.N., Christine Boyette, R.N., Kristine Johnson, R.N. and Ernest Harden were not published to a third person.

Even if Christine Boyette, R.N., was deemed to have published Exhibit "G" the statements contained therein are not actionable because they are conditionally privileged and the privilege has not been abused. Temple Terrace DaVita had an interest in protecting the health and safety of DaVita Temple Terrace staff and other patients receiving treatment. Exhibit "G" speaks to the responsibility of DaVita Temple Terrace to provide both a safe workplace for employees and a safe place for medical care for all patients. A communication made in good faith on any subject matter by one having an interest therein, or in reference to which he has a duty, is privileged for defamation purposes if made to a person having a corresponding interest or duty, even though it contains matter which would otherwise be actionable, and though the duty is not a legal one but only a moral or social obligation. Geddes, *supra*. Thus, any statements made by one who has an interest in the health and safety of the patients and staff at the facility, would have a qualified privilege.

Although Mr. Harden did not identify any other allegedly defamatory statements, either in his deposition or in answers to interrogatories, the record evidence in this case reflects other communications in which statements were attributed to Ernest Harden on the subject of gun violence.

All other communication regarding Mr. Harden's threats to bring a gun to and blow up the DaVita Temple Terrace clinic were made only by and to persons who had an interest in protecting themselves and others from physical harm from bullets, and therefore are privileged for purposes of a defamation action and this no liability will attach to any defamatory statements. Thomas v. Tampa Bay Downs, 761 So. 2d 401 (2d D.C.A. 2000).

Although Mr. Harden only complains of statements in Exhibit "G"; the record evidence reveals that the following privileged communications were made regarding statements attributed to Plaintiff, Ernest Harden.

1. Verbal statements from Laverne Baker, R.N. to Kristine Johnson, R.N. regarding threats she overheard Mr. Harden make (Deposition of Laverne Baker, R.N. pages 12, 14, 27 and 28).

2. Written note of DaVita Temple Terrace employee Persephanie (also known as Stephanie) Singletary of her interview with staff members at Kristine Johnson's request as to what they overheard Mr. Harden say, including threats. (Deposition of Persephanie Singletary, Exhibit "J.")

3. Verbal statement made by Kristine Johnson, R.N. to her supervisor, Christine Boyette, R.N. regarding what Laverne Baker, R.N. relayed to her (Deposition of Laverne Baker, R.N., page 12, 14, 27 and 28 and Exhibit "C.")

4.    Verbal statements made by Kristine Johnson, R.N to an assembled group of DaVita Temple Terrace staff members regarding threats made by Mr Harden and the intent to discharge him from the clinic. (Deposition of Laverne Baker, R.N. pages 18 and 19)

5.    Written notations in Mr. Harden's medical record Christine Boyette, R.N., Kristine Johnson, R.N. and social worker, Amy Buchalter The medical record is deemed confidential and is accessible only to DaVita staff employees (Exhibit "H" and "M").

6    Verbal statement made by Christine Boyette to Mr. Harden on June 29, 2006 advising him of the reason for discharge and providing him with Exhibit "G." This statement was made in the presence of a Temple Terrace police officer (Exhibit "L") The police officer obviously shared an interest in protecting the health and safety of community members.

Any and all communications made among and between Kristine Johnson, R.N. and Christine Boyette, R.N., Laverne Baker, R.N., Amy Buchalter, the police officer, Persephanie Singletary and other DaVita Temple Terrace staff were privileged in that each had an interest in self preservation and the health, safety and welfare of others within the facility Because each had a corresponding interest in the subject matter, such statements are privileged communications and are not actionable as defamatory statements. Thomas, *supra*. Once a communication is determined to be qualified privileged it become cloaked with the legal presumption of good faith and then the burden shifts to the Plaintiff to prove express malice. Magre v. Charles, 729 So. 2d 440 (5th D.C.A. 1999). The record is devoid of any evidence which would show malice on the part of Defendants, Kristine Johnson, R.N. or DaVita Temple Terrace.

The question of whether a defamatory statement is privileged is a question of law properly decided by a court, if the circumstances surrounding the communication are undisputed or so clear

-14-

under the evidence as to be unquestionable. _Thomas, supra_ Accordingly, since the statements and communications attributing violent statements to Ernest Harden unquestionably had a qualified privilege, these Defendants are entitled to summary judgment as a matter of law as to Counts III and IV of the Complaint.

## ARGUMENT/NEGLIGENT HIRING AGAINST DAVITA TEMPLE TERRACE

There is No Record Evidence to Support Plaintiff, Ernest Harden's Claim of Negligent Hiring, in Count V of Plaintiff's Complaint.

Plaintiff blankedly alleges in Count V that DaVita Temple Terrace knew or should have known that Kristine Johnson, R.N., was not "fit" for employment. Kristine Johnson, R.N., was the manager/facility administrator at DaVita Temple Terrace since July 2000. Kristine Johnson, R.N.'s affidavit, in support that she was qualified for employment or in Plaintiff's terms "fit," is filed herein as Exhibit "D" in support of this Motion for Summary Judgment.

There is no record evidence to show that DaVita Temple Terrace negligently hired Kristine Johnson, R.N., because she was unfit for employment. Accordingly, Defendant, DaVita Temple Terrace is entitled to summary judgment in its favor as to Count V of Plaintiff's Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that this __3rd__ day of January, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to: **Richard L. Bradford, Esquire, Bradford and Bradford, P.A.,** 150 East Bloomingdale Avenue, Suite 114, Brandon, FL 33511, *Attorneys for Plaintiff.*

*Harden v. DaVita, Inc., et al*
Case No.: 8:07-cv-675-T-30TGW

s/___**Diane Zuckerman**_____

**DIANE I. ZUCKERMAN, ESQUIRE**
Florida Bar No: 0752592
**LOUIS J. La CAVA, ESQUIRE**
Florida Bar No. 0507880
Attorneys for Defendants
**STEPHENS, LYNN, KLEIN, LA CAVA,**
 **HOFFMAN & PUYA, P.A.**
101 East Kennedy Boulevard
Bank of America Plaza, Suite 2500
Tampa, Florida  33602
Tel: (813) 209-9611
Fax: (813) 209-9511
Zuckermand@stephenslynn.com